JOHN J. and CARMEN M. SOLON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solon v. Commissioner
Docket No. 9206-75.
United States Tax Court
T.C. Memo 1980-77; 1980 Tax Ct. Memo LEXIS 510; 39 T.C.M. (CCH) 1245; T.C.M. (RIA) 80077; March 18, 1980, Filed John J. Solon, pro se. James R. Turton, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1972 and 1973 in the amounts of $361.37 and $83.36, respectively. By amendment to petition, petitioners claimed a refund of tax for the year 1972 of $4,662.95. The issues for decision are: (1) Whether, with respect to the year 1972, petitioners (a) are entitled to a deduction for automobile expenses in excess of $1,200; (b) are entitled to a deduction for business rental expense *511 or a business bad debt in the amount of $6,000 or any portion thereof; (c) are entitled to an additional medical expense deduction of $70 for transportation; (d) are entitled to an investment tax credit on a 1962 Ford automobile, a 1962 Cadillac automobile, a 1968 Pontiac automobile and a 1971 Dodge Van, and, if so, the amount thereof; and (e) are entitled to an investment credit on a 1972 Chrysler automobile in excess of $93.89. [1]
(2) Whether, with respect to the year 1973, petitioners (a) are entitled to a deduction for automobile expenses in excess of $98.48 and (b) are entitled to a deduction for business use of an office in home in excess of $266. FINDINGS OF FACT Petitioners, husband and wife, who resided in Dallas, Texas at the date of the filing of their petition in this case, filed a joint Federal income *512 tax return for the calendar year 1972 with the Internal Revenue Service Center, Austin, Texas. Petitioners filed a joint Federal income tax return for the calendar year 1973 with the District Director of Internal Revenue, Dallas, Texas. Petitioners, for the calendar year 1973, filed a joint amended U.S. Individual Income Tax Return in which they claimed deductions in addition to those claimed on their original return. John J. Solon (petitioner) is a lawyer. He also worked on the 3 p.m. to 11 p.m. shift for Southwest Airmotive Company (later Cooper Airmotive) in Dallas, Texas during each of the years here in issue. Carmen M. Solon is a registered nurse and during the years here in issue worked as a registered nurse on certain days for a blood bank, Nolan Enterprises, and on other days would obtain work from a register which assigned her to different hospitals at different times. However, at no time did she work at more than one location on one day. During the year 1972 petitioner did legal work for a Mr. Frankfurter and in return was furnished office space for his legal practice in the Highlander apartment hotel on Loma Alto in Dallas, Texas. Other than being furnished an *513 office by Mr. Frankfurter, petitioner received no compensation for the legal services he rendered to Mr. Frankfurter. Petitioner handled a number of cases for Mr. Frankfurter involving the Highlander Hotel, condemnation of property and other matters. At the time petitioner filed his 1972 income tax return he estimated that the value of the office which he was permitted to use in return for the legal work he did for Mr. Frankfurter was $1,000, and on his Federal income tax return for the year 1972 deducted $1,000 as rent. At the trial petitioner testified that the value of the legal services which he rendered to Mr. Frankfurter was $6,000. Petitioner included no amount in the income reported on his Federal income tax return for 1972 or any other year as compensation received from Mr. Frankfurter for legal services. Petitioners' return was filed on the cash basis of accounting. Around the first of November 1972 petitioner was notified that there would be a rental charge to him for using the office space in the building owned by Mr. Frankfurter. Toward the end of 1972 petitioner moved his desk and law books into the room in his home intended for a dining room, and during the year *514 1973 conducted his legal practice from his home. During 1972, when petitioner's office was in the Highlander apartments, at least 5 days a week and sometimes 6 days a week petitioner would drive in the morning from his home to his office in the Highlander apartments, a distance of between 8 and 10 miles. On most of the days, Monday through Friday, petitioner would drive from the Highlander apartments to the County courthouse, the Federal courthouse, or the Municipal courthouse in connection with his legal practice. The distance from his office at the Highlander apartments to each of these courthouses was about 5 miles. Sometimes on Saturday petitioner would drive from the Highlander apartments to the County courthouse library. Petitioner's total driving to the various courthouses from the Highlander apartments and returning to the Highlander apartments averaged about 10 miles per day, 5 days a week. Petitioner would leave the Highlander apartments and drive approximately 10 miles to his work at Cooper Airmotive in order to arrive there at a little before 3 o'clock. When petitioner concluded his work at Cooper Airmotive, usually at 11 p.m., he would drive back to his home, a distance *515 of about 10 miles. Generally, Mrs. Solon either drove from her home to her place of employment and back each day or petitioner would drive her to her place of employment each day. Petitioner had his office in the Highlander apartments for about 43 weeks during the year 1972. During the year 1972 petitioners had 10 children, 8 of whom were their dependents. Petitioners and their dependent children made a number of visits to physicians, dentists or clinics during 1972. Transportation to the offices of the physicians, dentists or clinics was by automobiles owned by petitioners. One or two visits were made to the Brown Lanier Clinic, which is approximately 3 miles from petitioners' home or 6 miles round trip. Petitioners or their children visited a doctor on Midway Road two or three times during 1972. This doctor's office is approximately one mile from petitioners' home or two miles round trip. Petitioners or their children visited Dr. Key in connection with eye examinations during 1972. The total payment made by petitioners to Dr. Key was $50. During 1972 Mrs. Solon made at least a dozen trips to visit a dentist. Also, one visit was made to a doctor out near LBJ Highway, *516 a distance of 5 miles from petitioners' home.One visit was made by petitioners or their dependents to the Baylor Dental Clinic, about 10 miles from petitioners' home, and one visit was made to a doctor on Forest Lane, approximately 3 miles from petitioners' home. A visit was made to the Brookhaven Hospital, approximately 5 miles from petitioners home, and another visit was made to the VeracruzRed Cross Hospital, which was approximately 10 miles from where petitioners were staying. Petitioners also drove to a pharmacy on a number of occasions to obtain medicine. In 1971 petitioner acquired a 1962 Ford automobile. This automobile was transferred to petitioner as part of a payment for a legal fee and petitioner included in his reported income as representing the value of the automobile when it was received in 1971 the amount of $10. Petitioner was never able to repair the automobile so as to make it operable and therefore the automobile was never used for business purposes. On August 11, 1970, petitioner purchased a 1962 Cadillac automobile and shortly thereafter began to use it partially in his business. On September 1, 1971, petitioner purchased a 1968 Pontiac and during *517 1971 commenced using it partially in his business. On November 25, 1970, petitioner purchased a 1971 Dodge Van and began using it partially in his business as soon as it was purchased. On September 23, 1972, petitioner purchased a new 1972 Chrysler automobile at a cost of $8,048.This automobile was partially used in petitioner's business. During 1973 petitioner maintained his law office in his home. Petitioner moved his desk and his law books into the 10 feet x 10 feet dining room of his home. The area in the dining room was so crowded that there was no space in that room to interview clients. The dining room of petitioner's home was not used by any member of the family other than petitioner, and petitioner's use of this space was entirely in connection with his legal practice. The living room in petitioner's home was 16 feet 5 inch x 13 feet with a small bay window that extended out from the room by approximately 4-1/2 feet. During the hours from 8 a.m. to 2 p.m. petitioner would, when he interviewed a client, use the living room in which to hold the interview. Generally during this period no other member of the family made any use of the living room area. The balance *518 of petitioners' house consisted of a 13 foot square bedroom and two other bedrooms each approximately 10 feet x 10 feet, a hallway and a bath and a half-bath. In addition, petitioner had made the garage in the house into a room which could be used by his children if they had company. Petitioners did not have a television in their living room but kept their television in the back bedroom and the family sat in that room when they were watching television. There was also a breakfast room and kitchen in the house. In order to reach the back entrance to the house it was necessary to walk through the breakfast room and part of the kitchen. During 1973 some of petitioners' children were away at college. The members of the family who were at home used the kitchen for cooking food and the breakfast room was used by the family as a place for eating their meals. During the year 1973 depreciation applicable to petitioners' entire house was $2,000, insurance applicable to the entire house was $50, heat and light costs were $480, repairs and maintenance $40, and telephone $92, making a total of $2,662. The entire floor space of petitioners' house was approximately 1,080 square feet. [2] *519 Petitioners, on their tax return for the calendar year 1972, claimed total automobile expenses of $2,589 computed as follows: Van - business miles 10,000
Pontiac - business miles 500
Total 10,500
$ 630
First year depreciation - Chrysler
1,509
Depreciation - Van
400
Depreciation - 1968 Pontiac
50
Total
$2,589
Respondent in his notice of deficiency determined that petitioners were entitled to a deduction of $1,200 as automobile expense with the following explanation: It is determined that a deduction in the amount of $1,200.00 is allowable for automobile expense in lieu of the amount of $2,609.00 claimed on Schedule C. It is further *520 determined that you claimed the standard mileage rate plus depreciation. Accordingly, taxable income is increased $1,409.00. See computation as follows: Per Return
Corrected
Adjustment
Standard Mileage rate
$ 600.00
$1,200.00
($ 600.00)
Depreciation: Additional first year
1,509.00
0
1,509.00
VAN
400.00
0
400.00
PONTIAC[3]
100.00
0
100.00
Totals
$2,609.00
$1,200.00
$1,409.00
Petitioners on their 1972 tax return claimed a rental expense deduction of $1,000. Respondent disallowed this claimed deduction and petitioners in their amended petition claimed that they should be entitled to a rental expense deduction or a bad debt loss in connection with legal services rendered in exchange for rent *521 of $6,000. In their amended petition, petitioners also claimed additional medical expenses for 1972 for transportation of $70 and investment credit with respect to automobiles computed as follows: Automobile
Investment Credit
1962 Ford
$ 300.00
1962 Cadillac
13.75
1968 Pontiac
49.00
1971 Dodge Van
411.35
1972 Chrysler
470.45
Total
$1,244.55
Although petitioners had claimed no investment credit with respect to automobiles on their 1972 tax return as filed, respondent allowed an investment credit with respect to the 1972 Chrysler which he computed in his notice of deficiency as follows: INVESTMENT CREDIT Cost of Auto 9-23-72
$8,048.00
50% Personal Use
4,024.00
Business Use
$4,024.00
Basis for Investment Credit
$4,024.00
Life 3 to 5 years
33-1/3%
Total Qualified Investment
$1,341.33
Investment Credit Percentage
7%
Allowable Investment Credit
$ 93.89
In their amended petition petitioners also claimed an additional $360 of automobile expenses for 1972 based on "12"/MILE & TOLLS/3,000. 00 MI. 360.00." Petitioners on their Federal income tax return for 1973 claimed automobile expense of $98.48 based on 820 *522 business miles driven. They also claimed a deduction for auto repairs and new tires of $186.28. Respondent in the notice of deficiency disallowed the $186.28 deduction claimed by petitioners for auto repairs and new tires. Petitioners on their 1973 Federal income tax return claimed a deduction of $459 explained as follows: 1/10 household/office - 4153 Beechwood - $459.00 Respondent in his notice of deficiency allowed $266 of this claimed deduction based upon expenses of depreciation, insurance, heat and light, repairs and maintenance and telephone, totaling $2,662, with 10 percent allocated to business, and therefore disallowed $193 of petitioners' claimed home office expense. Petitioners in their amended petition for 1973 claimed that 50 percent of their home was used as an office and therefore claimed a deduction for home office expense of $1,331, an increase of $872 over the amount claimed in their petition. OPINION All the issues in this case are purely factual. Petitioners claimed automobile expenses in 1972 based on a combinaion of mileage and claimed depreciation. Respondent allowed petitioners a deduction based on 12 cents a mile, the amount applicable in 1972 *523 for taxpayers computing automobile expenses on a mileage basis, for 10,000 miles and disallowed the balance of the deduction claimed for automobile expense. At the trial petitioner substantiated only approximately 5,000 miles of business driving. The balance of the mileage which petitioner considered to be business driving was clearly commuting expenses representing Mrs. Solon's driving to and from her place of employment and petitioner's driving to his first place of employment and home from his last place of employment. Commuting expenses are not properly deductible. Fausner v. Commissioner,413 U.S. 838 (1973); Heuer,Jr. v. Commissioner,32 T.C. 947 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). Petitioner at the trial substantiated only approximately one-half of the business mileage that respondent allowed in the notice of deficiency.Petitioner is not entitled to deduct automobile expenses based on business mileage driven and also claim a deduction for depreciation of the automobiles. Nash v. Commissioner,60 T.C. 503, 520 (1973). See also Rev. Proc. 70-25, 1970-2 C.B. 506. Were petitioner's *524 depreciation computation correct, it might be beneficial to petitioner to claim depreciation with respect to the automobiles rather than 12 cents a mile for the business mileage driven. However, petitioner's computation for depreciation on the automobiles is incorrect. The computation is based on the full cost of each of the automobiles, while the record is clear that these automobiles were not used full-time for business purposes. In fact, the record does not show the percentage of the use of the automobiles which was for business. Therefore, petitioner has failed to show error in respondent's determination of his automobile expense deduction for 1972. The record, however, is clear that petitioner only claimed $2,589 in automobile expenses rather than $2,609 as listed by respondent in his notice of deficiency. Respondent showed the standard mileage rate claimed by petitioner as $600 rather than the $630 claimed by petitioner, and the depreciation claimed on the Pontiac as $100 rather than $50. Respondent did not mention a disallowance of the depreciation claimed by petitioner on his office furniture in the notice of deficiency but rather, apparently by mistake, considered *525 the $50 of depreciation claimed on office furniture to have been claimed on the Pontiac automobile. Because of these errors in computation in the notice of deficiency, petitioner is entitled to an additional deduction of $20, whether it be considered as additional automobile expenses or merely an erroneous computation in the notice of deficiency. Petitioners have not shown either the fair value of the office furnished to petitioner by Mr. Frankfurther in return for legal services or the fair value of the legal services rendered. However, it is clear that petitioner exchanged legal services for rent and did not report any value of the rent as income. Therefore, petitioner has effectively offset the value of the services by the value of his rental and is entitled to no deduction from income for rental of office space from Mr. Frankfurter. The basis of petitioner's claim of a bad debt of $6,000 is not clear. Apparently, petitioner feels that his legal services to Mr. Frankfurter in 1972 were worth $6,000 more than the space he was permitted to use was worth in rental value. However, since petitioner, a cash basis taxpayer, reported no income from his legal services to Mr. Frankfurter, *526 there is nothing against which petitioner could offset any amount which Mr. Frankfurter might have owed him but not paid. Furthermore, the record is reasonably clear that petitioner's agreement with Mr. Frankfurter was that petitioner would render legal services in return for use of office space. Therefore, there existed no bad debt to petitioner from Mr. Frankfurter in any event. See Hutcheson v. Commissioner,17 T.C. 14, 19 (1951). Respondent in his brief computed the amount of medical transportation which petitioners had substantiated on the basis of 112 miles at 6 cents a mile, the rate applicable to the cost of automobile transportation for medical purposes in 1972, or a total of $6.72. In this computation respondent used only the mileage which petitioner was able to clearly estimate. In our view, petitioners did show some mileage in addition to the 112 miles which respondent used in his computation. On the basis of the record as a whole we conclude that petitioners have shown medical transportation expenses in 1972 of $15. Petitioners made no showing with respect to how they computed the investment credit claimed on the five automobiles for 1972. Clearly, *527 none of the automobiles, except the 1972 Chrysler, were placed in use during the year 1972. Section 46(c), I.R.C. 1954, [4] provides that qualified investment with respect to any taxable year is the applicable percentage of section 38 property "placed in service by the taxpayer during such taxable year." Section 38 property is defined in section 48 to include tangible personal property. An automobile would clearly fit within this definition. The record shows that petitioners did not place any of their automobiles in use in the taxable year 1972 except the 1972 Chrysle. Petitioners have shown no error in respondent's computation of the investment credit applicable to the 1972 Chrysler and this computation appears correct. Sections, 1.46-3(a)(1) and 1.46-3(b), Income Tax Regs.
*528 Respondent in his notice of deficiency allowed petitioners the $98.48 claimed as automobile expense in 1973 but disallowed the $186.28 claimed by petitioners on their 1973 tax return for auto repairs and new tires. Petitioners have not substantiated the expenditure of the $186.28 nor shown what portion of this amount would be applicable to business usage of an automobile or automobiles. Petitioners are not entitled to deduct automobile expense on a mileage basis and also deduct cost of repairs and new tires. See Rev. Proc. 70-25, supra. We therefore sustain respondent's determination with respect to the automobile expense for 1973. Petitioners on their income tax return for 1973 claimed use of one-tenth of their home as an office for Mr. Solon. How they arrived at the $459 on this basis is not shown. In the amended petition petitioners claimed a deduction of 50 percent of the depreciation and cost of maintenance, insurance and like items on their house as applicable to petitioner's office. The record clearly shows that the 10 feet X 10 feet dining room in petitioners' house, which was approximately 10 percent of the square footage of the house, was used *529 exclusively by petitioner as an office in 1973. The record is clear that no other member of the family went into this room. The record also shows that petitioner made some use of the living room for interviewing clients because there was no space for him to interview clients in the dining room in which he kept his desk and law books. The living room consisted of approximately 215 square feet or 20 percent of the space in the house. However, it is clear that personal usage was made of this room by petitioner's family. In Browne v. Commissioner, 73 T.C.     (Jan. 22, 1980), we held that in computing the amount of deduction for home office expense to which a taxpayer is entitled, the allocation to business use is the ratio which results from dividing the total hours of business use, of that portion of the house used partially for business, by the total hours the space is used for all purposes. Using this criterion, we concluded from the testimony and other facts in the record that petitioners' living room was used 50 percent of the time for business purposes and 50 percent for personal purposes. This would mean that an additional 10 percent of depreciation and costs of insurance, *530 repairs and utilities on petitioners' house for 1973 is properly applicable to petitioners' home office expense. Petitioners contend that some business usage was made of the hall, kitchen and bathroom but totally failed to show the amount of any of such usage. We hold that petitioners are entitled to a deduction of $532 for home office expense in 1973 rather than the $266 allowed by respondent. [5]
Decision *531 will be entered under Rule 155. Footnotes
1. Because of an increase in the amount of petitioners' gross income, respondent in the notice of deficiency disallowed $43 of the deduction claimed by petitioners for medical expenses for the year 1972. However, there is no issue with respect to this adjustment since the allowable amount is a question of computation after determination of the other issues.↩
2. Petitioner in his brief drew a diagram of his house on the basis of which he argued that the overall area of the house was 1,578 sq. ft. However, at the trial respondent conceded that the square footage of petitioners' house was 1,080 sq. ft. Petitioner, based on a diagram placed in evidence, agreed that that figure was approximately correct. The diagram contained in petitioner's brief differs from the diagram placed in evidence by petitioner. We have made our finding based on the evidence presented at trial.↩
3. It is clear on petitioners' return that only $50 depreciation was claimed on the Pontiac automobile. In the depreciation schedule petitioners also claimed $50 of depreciation on desk, chairs, etc.The deficiency notice makes no mention of any error in petitioners' claim of depreciation on the desk, chairs or other office furniture. It appears that respondent considered both $50 amounts to be claimed with respect to the Pontiac automobile.↩
4. Section 46(c)(1)(A) and (B) of the Internal Revenue Code of 1954, as amended and in effect in the years in issue, provides as follows: SEC. 46. AMOUN OF CREDIT. * * *
(c) Qualified Investment.-- (1) In general.--For purposes of this subpart, the term "qualified investment" means, with respect to any taxable year, the aggregate of-- (A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year, plus (B) the applicable percentage of the cost of each used section 38 property (as defined in section 48(c)(1)) placed in service by the taxpayer during such taxable year.↩
5. Petitioner at the trial claimed that he had furnished certain of his records to the Internal Revenue Service which had not been returned to him. He also claimed harassment. Since the record is so clear that all records furnished by petitioner to the Internal Revenue Service were returned to him, and that petitioners were not subject to harassment by the Internal Revenue Service, we have not considered it necessary to discuss petitioners' claims in this respect in this opinion. Also, at the trial petitioner made reference to several other items such as the cost of a trip to Veracruz, Mexico and traveling expenses. Petitioners offered no evidence concerning these items at the trial and therefore we do not consider any issue with respect to these items to be before us.↩