SASSAN ALISOBHANI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alisobhani v. Commissioner
Docket No. 20697-93
United States Tax Court
T.C. Memo 1994-629; 1994 Tax Ct. Memo LEXIS 647; 68 T.C.M. (CCH) 1493; December 21, 1994, Filed *647 Decision will be entered under Rule 155. Sassan Alisobhani, pro se. For respondent: Linette Angelastro. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $ 6,338, plus a penalty under section 6662(a) in the amount of $ 1,268. The issues for decision are: (1) Whether petitioner is entitled to claim dependency exemptions for his mother and father; (2) whether petitioner is entitled to claim head of household status; (3) whether petitioner is entitled to a deduction in the amount of $ 3,000 for a contribution made to a mosque located in Iran; (4) whether petitioner is entitled to claimed Schedule C deductions; and (5) whether petitioner is liable *648 for the penalty under section 6662(a). Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in Woodland Hills, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). We must note initially that we found petitioner to be a forthright and credible witness, which has weighed heavily in our decision-making process. Dependency Exemptions and Head of Household Status
Petitioner claimed two dependency exemptions, for his mother and father, on his 1990 return. Petitioner testified that his parents, Iranian emigres, have resided with him since arriving in the United States in the early 1980's. Petitioner further testified that, other than the monthly $ 501.34 Supplemental Security Income payments which his father began receiving on July 1, 1990, his parents had no other source of income. Thus, during 1990, petitioner testified that he provided his parents with *649 shelter, clothing, food, and medical care. Section 151(a) and (c)(1) allows a taxpayer a deduction for exemptions for dependents as defined in section 152(a), provided certain requirements are met. Section 152(a)(4) provides that a taxpayer's mother or father may qualify as a dependent and that a dependent must receive over half of his or her support for the taxable year from the taxpayer in order for the taxpayer to be entitled to claim an exemption for that dependent. Based on petitioner's testimony, we believe that petitioner provided more than half of his mother's support for 1990. However, petitioner's father received Supplemental Security Income payments in the amount of $ 3,108.31, [2] which funds are considered as being contributed by the father for his own support. E.g., Black v. Commissioner, T.C. Memo. 1972-135. When the Supplemental Security Income payments are taken into consideration, petitioner has not shown that he contributed more than one-half of his father's support. Accordingly, based on this record, we cannot conclude that petitioner provided more than half of his father's support for 1990, and, therefore, petitioner is only *650 entitled to the claimed dependency exemption for his mother. Petitioner also claimed a filing status as "head of household" on his 1990 return. Section 2(b)(1) defines the term "head of household", as relevant herein, as an unmarried taxpayer who maintains a household which constitutes for the taxable year the principal place of abode of his father or mother, if the taxpayer is entitled to a deduction for such taxable year for his father or mother under section 151. Accordingly, based on our determination that petitioner's mother was a dependent of petitioner, that she lived with petitioner for all of 1990, and that petitioner maintained the requisite household, petitioner is entitled to claim head of household status. Charitable Contribution
Petitioner claimed a charitable contribution deduction in the amount of $ 3,000 on his 1990 return. *651 Petitioner testified that pursuant to his Islamic religion, he was required to tithe. Thus, petitioner testified that he made contributions to a mosque located in Iran in the neighborhood in which his family had lived. Although petitioner substantiated the claimed contributions, respondent disallowed the deduction because the mosque does not qualify as a charitable donee under section 170(c). To be entitled to a deduction for the contributions, petitioner is required to show that the mosque is an organization of the type listed in section 170(c). [3] Petitioner does not dispute that the mosque to which he made his contributions is neither organized in the United States or in any possession thereof, nor under the law of the United States, any State, the District of Columbia, or any possession of the United States. See ErSelcuk v. Commissioner, 30 T.C. 962 (1958); Tobjy v. Commissioner, T.C. Memo. 1986-62; Herter v. Commissioner, T.C. Memo. 1961-19. Therefore, the mosque is not a qualified donee under section 170(c)(2), and we sustain respondent on this issue. Schedule C Deductions *652 During 1990, petitioner was employed full time as an engineer for Rockwell International Corp. In addition, he owned and *653 operated an import/export business known as "Unitrade". Generally, petitioner would visit local foreign trade offices to learn of new products which he thought he could successfully market within the United States. If petitioner found a product in which he was interested, he would purchase samples from the manufacturer which he could then distribute to potential buyers. During 1990, petitioner's efforts were primarily directed to marketing a multipurpose survival tool, consisting of a combination pick, hammer, knife, sickle, bar, shovel, axe, and saw. On a Schedule C for this activity on his original income tax return for 1990, petitioner reported gross receipts in the amount of $ 816 and claimed expenses in the amount of $ 11,940. [4] In the notice of deficiency, respondent disallowed all the expenses claimed on the Schedule C based on lack of substantiation. On or about September 23, 1992, petitioner filed a Form 1040X for 1990, claiming a refund of $ 1,036, which claim was disallowed in the notice of deficiency. The claim was based upon an amended Schedule C which reports gross receipts in the amount of $ 816, cost of goods sold in the amount of $ 960, and expenses in the *654 amount of $ 14,712. [5] Petitioner asserts that the amended Schedule C accurately characterizes the expenses incurred. Thus, with one exception, the following discussion pertains to the items claimed on the amended Schedule C. We must determine whether petitioner properly claimed cost of goods sold and business expense deductions for his import/export business. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled *655 to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). If certain claimed deductions are not adequately substantiated, we may be permitted to estimate them when we are convinced from the record that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). 1. Cost of Goods Sold
Petitioner claimed $ 960 for cost of goods sold on his amended Schedule C. At trial, petitioner testified that he often purchased sample products to examine and send to prospective buyers. Additionally, petitioner presented a copy of his 1990 daily diary which contains daily entries of his alleged business expenses. The daily diary indicates that petitioner incurred $ 960 for sample products. Moreover, petitioner also presented copies of money orders which corroborate the entries contained in the daily diary. Accordingly, petitioner is entitled to a cost of goods sold in the amount of $ 960. 2. Advertising
On petitioner's *656 amended Schedule C, petitioner claimed $ 509 for advertising. Petitioner's daily journal indicates that he incurred $ 80.44 for business cards and $ 429 for printed flyers during 1990. Based on this record, we allow petitioner $ 509 for advertising expense. 3. Computer Cost
On petitioner's original Schedule C, petitioner claimed $ 604 for depreciation on a computer. Thereafter, on the amended return filed on or about September 23, 1992, petitioner elected to expense the cost of the computer pursuant to section 179. Alternatively, petitioner contends that if he cannot expense the cost of the computer, he is entitled to depreciation on the computer. Respondent disallowed the amount claimed on the original return based on lack of substantiation. Petitioner stated that he purchased a computer from Maya Computer Co., Inc., during 1990. At trial, petitioner offered a copy of his American Express card statement dated August 4, 1990, which indicates that he purchased a computer for $ 4,226. Petitioner further testified credibly that he only used the computer for his import/export activity. Based on this record, we find that in 1990 petitioner purchased a computer for $ 4,226 *657 which was used solely in his import/export business. [6]
However, section 179(a) provides that a taxpayer may elect to treat the cost of any section 179 property, defined in section 179(d)(1) as "any tangible property (to which section 168 applies) which is section 38 property and which is acquired by purchase for use in the active conduct of a trade or business," as an expense which is not chargeable to a capital account. The maximum amount that may be deducted as an expense under this section during the taxable year 1990 is $ 10,000. Sec. 179(b)(1). Section 179(c)(1) provides: (1) In General. -- An election under this section for any taxable year shall -- (A) specify the items of section 179 property to which the election applies and the portion of the cost of each of such items which is to be taken into account under subsection (a), and (B) be made on the taxpayer's return of the tax imposed by this chapter for the taxable *658 year.
Such election shall be made in such manner as the Secretary may by regulations prescribe.
Section 1.179-5(a), Income Tax Regs., provides that the election under section 179 "shall be made on the taxpayer's first income tax return for the taxable year to which the election applies (whether or not the return is timely) or on an amended return filed within the time prescribed by law (including extensions) for filing the return for such taxable year. (Emphasis added.) Petitioner made no section 179 election for the computer on his 1990 return or any amended return filed "within the time prescribed by law (including extensions) for filing * * * [his 1990 tax] return". Subt v. Commissioner, T.C. Memo. 1991-429. Thus, pursuant to section 1.179-5(a), Income Tax Regs., petitioner's amended return had to have been filed no later than October 15, 1991 (assuming valid extensions), in order for him to have properly elected section 179 treatment. Petitioner's election was made on an amended return filed on or about September 23, 1992. Thus, petitioner is not entitled to an expense deduction under section 179 for the computer. However, petitioner *659 is entitled to depreciation on the computer based on a 5-year recovery period, which will be computed under Rule 155. 4. Office Expense and Supplies
Petitioner claimed $ 78 for office expense and $ 226 for supplies on his amended Schedule C. Petitioner's daily diary indicates that the office expense incurred was for paper products, pens, and rulers, and that the supplies consisted primarily of packing materials, such as boxes and tape, in which petitioner shipped samples to prospective buyers. Based on petitioner's testimony and the 1990 daily diary, we allow petitioner $ 78 for office expense and $ 226 for supplies. 5. Travel and Entertainment
Petitioner claimed $ 3,114 for travel and entertainment expense on his amended Schedule C. At trial, the only evidence presented by petitioner was his daily diary, in which petitioner jotted down his abbreviated notes with respect to his travel and entertainment. However, no proof of the expenditures, such as receipted bills, canceled checks, or credit card receipts was provided. Section 274(d) requires that the taxpayer substantiate expenses claimed for travel and entertainment by adequate records to corroborate his own *660 testimony as to (1) the amount of the expense, (2) the time and place of travel or entertainment, (3) the business purpose of the entertainment or travel, and (4) the business relationship to the taxpayer of each person entertained. We must conclude that petitioner's daily diary with the brief notes does not satisfy the substantiation requirements of record keeping for this type of item pursuant to section 274(d). Leone v. Commissioner, T.C. Memo. 1993-51; see sec. 1.274-5(c), Income Tax Regs. Accordingly, we sustain respondent on this issue. 6. Car Expense, Insurance, and Repairs
At trial, petitioner contended that he was entitled to car expenses in the amount of $ 3,649 (based on mileage), as well as $ 467 for car insurance and $ 824.50 for repairs. However, we note that mileage deductions can be claimed only in lieu of actual expenses, such as insurance and repairs, and not in addition to such expenses. Nash v. Commissioner, 60 T.C. 503, 520 (1973); Parker v. Commissioner, T.C. Memo. 1993-15. To claim actual expenses, a taxpayer must substantiate with adequate books and records *661 all actual automobile expenses incurred. Alternatively, the taxpayer may use the mileage rate set forth by respondent in the appropriate revenue procedure. For 1990, the appropriate mileage rate was 26 cents per mile. Rev. Proc. 89-66, 1989-2 C.B. 792. Based on petitioner's 1990 daily diary, which indicates where petitioner drove, the purpose, and the mileage incurred, we conclude that petitioner incurred 12,226 business miles. Therefore, petitioner is entitled to a mileage deduction in the amount of $ 3,188.12 (12,226 miles x 26 cents). However, as petitioner elected to deduct mileage, rather than actual expenses, he is not entitled to deduct the amounts claimed for insurance and automobile repairs. 7. Legal and Professional Fees
Petitioner claimed $ 225 for legal and professional fees. Petitioner testified that he hired an attorney, Mr. Hassan Amirshahi, to discuss the possibility of forming a partnership through which to conduct his import/export business. Indeed, petitioner's daily diary indicates that he paid Mr. Amir-shahi $ 225. Accordingly, we allow petitioner $ 225 for legal and professional fees. 8. Other Expenses
*662 Petitioner claimed other expenses on his amended Schedule C in the amount of $ 2,218, which consisted of $ 492 for postage, $ 901.50 for telephone expense, and $ 842.50 for automobile repairs (discussed supra). With respect to the postage, petitioner testified that he did numerous mailings to prospective buyers, including, on occasion, the shipment of samples. In addition to petitioner's testimony, the daily diary contains entries of the amounts spent on postage. Based on this record, we believe petitioner is entitled to a deduction in the amount of $ 492 for postage. However, with respect to the $ 901.50 for telephone charges, petitioner failed to offer any testimony as to whether this represents charges for a separate business line or a portion of his personal telephone bill (see sec. 262(b)), or whether long distance charges, if any, were for business or personal use. Thus, petitioner has failed to establish that he is entitled to any deduction for telephone expenses. 9. Amortization
As indicated earlier, petitioner's original return included a deduction for amortization of $ 1,726, which amount was included in respondent's disallowance of all expenses in the notice *663 of deficiency. The amended return was based upon a reconstruction of the cash outlays and other events occurring in 1990, plus the section 179 claim, and, in our opinion, petitioner and his tax return preparer forgot to claim the amortization deduction on the amended return. Accordingly, we will consider it herein. The amortization deduction was based upon petitioner's contention in his 1989 Federal income tax return, which is in evidence, that he incurred startup or preopening expenses totaling $ 8,631, [7] which petitioner elected to amortize over 5 years beginning in 1989. The 1989 return contains a Schedule C for the import/export business reflecting zero income and the $ 1,726 amortization deduction. On October 15, 1992, respondent mailed petitioner a notice of deficiency for 1989, determining a deficiency *664 based solely upon unreported wages. Petitioner did not contest respondent's determination for 1989. It is well established that the Commissioner's failure to adjust an item in a prior year does not estop an adjustment by the Commissioner of that item in subsequent years. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183 (1957); National Lead Co. v. Commissioner, 40 T.C. 282, 297 (1963), affd. in part and revd. in part 336 F.2d 134 (2d Cir. 1964). Thus, petitioner is still obligated to prove that he is entitled to the amortization deduction in accordance with the applicable substantiation rules, which petitioner has failed to do. Under these circumstances, we hold that petitioner is not entitled to an amortization deduction in 1990 for 1989 startup expenses. Section 6662
Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment which is attributable to negligence or disregard of rules and regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, *665 or intentional disregard. Petitioner has the burden of proof on this issue. Rule 142(a). After careful review of this record, we conclude that petitioner should not be held liable for the section 6662 penalty. Accordingly, we sustain petitioner on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In addition to the monthly amount of $ 501.34 commencing July 1, 1990, petitioner's father also received $ 100.27 for the period from June 25 through June 30, 1990.↩
3. Sec. 170(c) Charitable Contribution Defined. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund, or foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable * * * purposes * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3)↩ by reason of attempting to influence legislation, and which does not participate in, or intervene in * * *, any political campaign on behalf of * * * any candidate for public office. * * *
4. The following are the expenses claimed on petitioner's Schedule C: ↩
Depreciation
$    604
Supplies
960
Travel
781
Meals and entertainment
2,333
Utilities
754
Miscellaneous
4,289
Shipping
493
Amortization
1,726
Total
11,940
5. Petitioner's amended Schedule C reflects the following expenses: ↩
Advertising
$    509
Car expenses
3,649
Depreciation
$    4,226
Insurance
467
Legal and professional services
225
Office expense
78
Supplies
226
Travel
781
Meals and entertainment
2,333
Other
2,218
Total
14,712
6. See Minter v. Commissioner, T.C. Memo. 1991-448↩.
7. The startup expenses consisted of: ↩
Trade show exhibit
$ 1,978
Office expense
735
Printing
519
Telephone
1,992
Travel & entertainment
2,810
Other miscellaneous expense
597
Total
8,631