T.C. Memo. 2013-189

UNITED STATES TAX COURT

KEITH DUNFORD AND ENA DUNFORD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30200-09.                    Filed August 20, 2013.

Ps operated a consulting business, maintained a residence in Illinois, and did much of their consulting work at various other warmer locations while living in their motor home. Ps claimed deductions associated with their travel, including deductions for actual vehicle costs, depreciation for their vehicles, and interest expenses for their motor home, along with mileage deductions as business expenses. R allowed some of Ps' claimed deductions but determined that many were unsubstantiated or claimed twice. R also determined that Ps are liable for accuracy-related penalties.

<u>Held</u>: With a few exceptions, Ps failed to substantiate their entitlement to business expense deductions beyond those R already allowed.

<u>Held</u>, <u>further</u>, Ps are entitled to deduct the interest they paid on the loan secured by their motor home as deductible home mortgage interest under I.R.C. sec. 163(h).

<u>Held</u>, <u>further</u>, Ps are liable for accuracy-related penalties.

[*2]  Paul J. Krazeise, Jr., for petitioners.

Kathryn E. Kelly and Lauren N. Hood, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GUSTAFSON, Judge:  Pursuant to section 6212,[1] the Internal Revenue Service ("IRS") issued to petitioners, Keith and Ena Dunford, a statutory notice of deficiency on October 30, 2009, for the Dunfords' 2005 and 2006 tax years.  In the notice the IRS determined that the Dunfords had deficiencies in tax of $32,633 for 2005 and $40,414 for 2006, and that they are liable for corresponding accuracy-related penalties of $6,536.60 and $8,082.80.  This case arises from the Dunfords' timely petition pursuant to section 6213 for redetermination of the tax and penalties in the notice.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (26 U.S.C., "the Code"), as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]**   After concessions by the parties, the issues to be decided[2] are:  (1) whether the Dunfords are entitled to depreciation and business expense deductions associated with their claimed business use of their motor home and other vehicles (we hold they are not); (2) whether the Dunfords are entitled to a mortgage interest deduction for interest paid on a loan secured by their motor home (we hold they are); (3) whether the Dunfords are entitled to various other non-vehicle business expense deductions (we hold that they are entitled to a few additional business expense deductions); (4) whether the Dunfords are entitled to net operating loss ("NOL") deductions (we hold that they are not); and (5) whether the Dunfords are liable for section 6662 accuracy-related penalties (we hold that they are).

## FINDINGS OF FACT

At the time they filed their petition, Mr. and Mrs. Dunford resided in Quincy, Illinois.  For their 2005 and 2006 tax years the Dunfords filed joint Federal income tax returns.  With their returns the Dunfords filed Schedules C, "Profit or Loss From Business", on which they reported income and expenses of Exam Group, LLC ("Exam Group").  In dispute are deductions the Dunfords

---

[2]The parties agree that the IRS's determinations regarding taxable Social Security income, self-employment tax, the self-employment tax deduction, and itemized deductions are computational issues that depend on our resolution of the other issues in the case.

[*4] claimed for Exam Group's activities.  For the years in issue the Dunfords were calendar-year, cash-method taxpayers.

The motor home

In March 2002 the Dunfords purchased a 2002 Beaver Contessa motor home, which they used for both business and personal travel during the years in issue, as is described below.  The Dunfords bought the Beaver Contessa for $283,494.  They paid $17,000 cash and, after a trade-in credit for their old motor home and other sales taxes and fees, still owed $240,889.91.  The Dunfords paid the outstanding balance with a loan from Bank of America.  As security for the loan the Dunfords gave Bank of America a lien on their newly purchased Beaver Contessa.

The motor home had a sleeping area, a bathroom, and a kitchenette with a countertop.  Across the vehicle from the kitchen counter was a second countertop that Mr. Dunford used as a desk, and on which he had a computer and office supplies.

**[*5]** <u>Exam Group</u>

The Dunfords created Exam Group in 2004 as an entity to conduct a consulting business. They co-owned Exam Group.[3] Mrs. Dunford performed some secretarial work for Exam Group, while Mr. Dunford, who has expertise in electrical engineering, business management, and marketing, worked as a consultant on behalf of Exam Group. Mr. Dunford provided Exam Group's clients a variety of services, which included sales development, market development, product development, and advice on market conditions. Exam Group had no other owners or employees.

Most of Exam Group's consulting during 2005 and 2006 was for XVD, a video technology company with offices in San Jose, California, and Tokyo,

---

[3]An LLC with two owners is generally taxed like a partnership, <u>see</u> sec. 26 C.F.R. 301.7701-2(c)(1), Proced. & Admin. Regs., and each owner reports his share of LLC income or loss on a Schedule E, "Supplemental Income and Loss". Instead, the Dunfords appear to have treated Exam Group as disregarded entity and reported its income and expenses on Schedules C. However, the Dunfords were the only owners of Exam Group, and for the years in issue they elected to file joint returns. Consequently, their tax liability is unaffected by the schedule on which the Exam Group items were reported, and we need not address this technical flaw.

[*6] Japan.[4] Exam Group's service agreement with XVD provided that Exam

Group (i.e., Mr. Dunford) would:

> identify and engage channels to market * * * products using the XVD technology * * *[,]
>
> identify and engage with potential business partners at various locations within the US, where a strategic relationship can bring significant benefit to the Client and the target partner * * * [, and]
>
> provide assistance with aspects of product marketing and branding * * *.

Mr. Dunford provided these services to XVD. His work included representing

XVD at the National Association of Broadcasters trade show in Las Vegas,

Nevada, meeting with several television executives, traveling to XVD's facilities

in San Jose, California, and traveling twice to XVD's facilities in Tokyo, Japan.

The Dunfords' travels

During 2005 and 2006 (as in prior and subsequent years), the Dunfords'

home was in Quincy, Illinois; but Mr. Dunford did most of his consulting work

away from their home, sometimes working at or near clients' locations. The

Dunfords were away from Quincy for about half of 2005 (i.e., the colder months);

---

[4]Mr. Dunford also consulted for Argil Venture Capital, a South African company that owned a portfolio of technology companies, but his work with Argil ended in early 2005.

**[*7]** and in 2006 they were away the entire year.  During these periods the Dunfords traveled and stayed in their motor home.

Throughout 2005 and 2006 the Dunfords traveled all across the United States and to Japan.  However, they spent most of their travel time in Florida, California, and Nevada.  During the years in issue, the Dunfords' three children lived in Florida, Nevada, and Quincy, Illinois--locations where the Dunfords spent significant time.  They kept no contemporaneous log that shows the business character of their travel and appointments; and the log they offered into evidence was a later reconstruction that often contradicted the documentary evidence of their whereabouts.  They had blended purposes, personal and business, for their travel; but their dominant motive for their travel plans was personal--i.e., the pleasure of being in the locations they chose and of being near their children.[5]

---

[5]As they explained in a family email to their friends:

> We will be heading back there [to Tampa] before Christmas as it is getting a bit too cold here--with daytime highs in the 20's * * * and the lows--well let's not even go there!  So call us wimps, but Florida daytime highs in the 60's and 70's with nighttime lows in the 50's kind of has more appeal.  So we shall be cranking up the old motor home about the time this letter is going out and heading south with a multitude of cats aboard.  Anyone wishing to call us, the number at the bottom of your screens will reach us--probably at the beach or

(continued...)

**[\*8]** The Dunfords had two other vehicles--a Saturn SC2 and a Ford Explorer. On at least some of their travels in the motor home, they towed one of these cars behind their motor home. They did not keep a log or record of the miles driven in these vehicles nor the purposes of the trips, and they did not introduce at trial any evidence of the total number of miles driven in 2005 or 2006 for either vehicle. We are unable to determine the extent, if any, to which these other cars were used for business purposes.

<u>The Dunfords' business records</u>

The Dunfords did not maintain books of account for Exam Group. They maintained numerous but unorganized receipts of their personal and business-related expenses in 2005 and 2006. They failed to distinguish between business and personal expenses, and they defended at trial the supposed business character of some expenses that were plainly personal. Their handwritten notes on receipts are unreliable (e.g., identifying several meal expenses as "breakfast meetings" with clients when the receipts bear time stamps indicating an evening meal, and the evidence shows that the Dunfords ate alone).

---

[5](...continued)
some Tiki Bar. We fit in quite nicely with the blue haired rinse crowd down there.

**[\*9]**    The Dunfords billed their clients for some, but not all, of the business expenses the Dunfords incurred.  According to Exam Group invoices and itemized expense reports, the Dunfords billed their clients for:  airline, auto rental, personal auto (miles and dollar amount based on mileage rate[6]), per diem, meals, and office-related expenses.  With the exception of their travel from Quincy to Florida in 2005 and 2006, the Dunfords appear to have been reimbursed for nearly all of the mileage they recorded in the activity log.  The Dunfords deducted all of their reimbursed expenses as travel expenses or deductible meal expenses on their Federal income tax returns.  Included in these deducted expenses are amounts associated with a car rental from July 1 to November 30, 2006, that Mr. Dunford used for XVD travel during that time.  The IRS in large part does not dispute the Dunfords' entitlement to deduct their reimbursed expenses.

---

[6]The rates the Dunfords used varied from 32 cents per mile for all vehicles in 2005 to 35 cents per mile for their cars and 50 cents per mile for their motor home in 2006.  These amounts do not correspond to the deductible standard mileage rates in effect for the years in issue, see infra note 8, but since the deductions will be disallowed for other reasons, see infra part II.B.1, we will not address their entitlement to deductions to the extent their mileage rate was less than the standard mileage rate, cf. Jackson v. Commissioner, T.C. Memo. 1999-226.

[*10] The Dunfords did not bill their clients for individual or actual vehicle costs as they were incurred (e.g., interest, depreciation, repairs, or maintenance) or for other expenses such as telephone, Internet, and postage.

Appendix A (for 2005) and Appendix B (for 2006) to this opinion show (1) the expense amounts that the IRS allowed after its examination (in the third column from the left); (2) additional amounts reflecting concessions that the Commissioner made before or after trial (in the fourth column); and (3) additional amounts (in the fifth column) that we find the Dunfords substantiated at trial both as to amount and as to their deductible character. We find that the Dunfords incurred as deductible expenses the amounts that are listed in those three columns.

The tax returns

The Dunfords have business acumen but no specific training in taxation or accounting. They hired their longstanding return preparer (who was not a certified public accountant) to prepare their 2005 and 2006 returns. Their preparer, with help and instruction from the Dunfords, completed their 2005 and 2006 returns. The Dunfords provided their return preparer with their receipts and their own allocation of the business versus personal character of their expenditures.

Appendixes A and B show, in the first two columns, the expense categories and the amount in each category that the Dunfords deducted on Schedules C

[*11] attached to their returns for 2005 and 2006. As is noted above, those amounts included both the expenses they had billed to their clients as well as the unbilled expenses.

The Dunfords claimed NOL carryover deductions of $46,743 for 2005 and $21,633 for 2006. The record does not indicate how the Dunfords calculated these figures, nor is there any evidence before us to substantiate any losses for prior years.

The Dunfords' 2005 and 2006 returns were timely filed.

Notice of deficiency

The IRS selected the Dunfords' 2005 and 2006 returns for examination. The IRS allowed the deduction of most of the expenses that the Dunfords had billed to clients and disallowed most of the deductions for non-billed expenses.

The IRS also disallowed the net operating loss carryovers that the Dunfords had deducted, basing the disallowance on "similar adjustments [for the loss-generating years, 2003 and 2004] required as noted in paragraph 'b' below [relating to the Schedule C adjustments for 2005 and 2006]".

The IRS also determined that the Dunfords were liable for accuracy-related penalties.

**[*12]** On October 30, 2009, the IRS issued to the Dunfords a notice of deficiency for their 2005 and 2006 tax years. On December 15, 2009, the Dunfords timely mailed their petition to this Court for redetermination of the deficiencies in the notice.

## OPINION

### I.    Evidentiary principles

The IRS's determinations are presumed correct, and taxpayers generally bear the burden to prove their entitlement to any deductions they claim. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The Dunfords' testimony was the linchpin of their case, but it was often manifestly unreliable and they did not carry their burden. Deductions are strictly a matter of legislative grace, and taxpayers must satisfy the specific requirements for any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 6001 requires that--

> Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. [Emphasis added.]

Taxpayers are thus required to keep sufficient records to substantiate their gross income, deductions, credits, and other tax attributes. See also 26 C.F.R.

**[*13]** sec. 1.6001-1(a), Income Tax Regs. Taxpayers are required to retain their

books and records as long as they may become material:

> (e) Retention of records.--The <u>books or records</u> required by this section shall be kept at all times available for inspection by authorized internal revenue officers or employees, and <u>shall be retained so long as the contents thereof may become material in the administration of any internal revenue law</u>. [Emphasis added.]

26 C.F.R. sec. 1.6001-1(e), Income Tax Regs. For many of the disputed points in

this case, the Dunfords lack real business records and attempt to rely on

reconstructions and disorganized receipts.

Certain expenses are subject to especially strict substantiation rules under

section 274(d). <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827-828 (1968), <u>aff'd</u>, 412

F.2d 201 (2d Cir. 1969); 26 C.F.R. sec. 1.274-5T(a), Temporary Income Tax

Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). These expenses include expenses

relating to travel, meals and entertainment, and expenses associated with the use of

certain "listed property". For the years in issue, "listed property" is defined in

section 280F(d)(4) to include passenger automobiles, computers, and cellular

phones.[7] When section 274(d) applies, a taxpayer must substantiate using

adequate records or sufficient evidence corroborating the taxpayer's own

---

[7]For tax years beginning after December 31, 2009, cellular phones are no longer "listed property" under sec. 280F(d)(4).

**[\*14]** statement: (1) the amount of the expense; (2) the time and place the expense was incurred; (3) the business purpose of the expense or business use of the asset; and (4) the business relationship of the taxpayer to other persons benefited by the expense or use, if any. <u>Shea v. Commissioner</u>, 112 T.C. 183, 187 (1999).

II.    <u>Schedule C deductions</u>

The Dunfords contend that they are entitled to depreciation deductions, interest expense deductions, and other business expenses deductions for expenditures related to their Exam Group activity. The Commissioner has determined that the Dunfords are entitled to most of the travel and meal expenses they deducted on their returns (i.e., the expenses for which the Dunfords have received reimbursement from their clients), but he disputes the Dunfords' entitlement to any depreciation or interest expense deductions and their entitlement to business expense deductions in excess of those already allowed.

A.    <u>Basic legal principles</u>

Pursuant to section 162(a), a taxpayer may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". A taxpayer is also entitled to deduct "a reasonable allowance for the exhaustion, wear and tear" of property used in a trade or business or for income-producing property. Sec. 167(a). In contrast, except where specifically

[*15] enumerated in the Code, no deductions are allowed for personal, living, or family expenses. Sec. 262(a). Because the Dunfords blended their personal, family-related travel with their professional work, this case requires distinguishing and allocating between business and personal expenses; but the Dunfords' allocations and distinctions were often not credible.

### B. Motor home and automobile deductions

#### 1. Vehicle expenses

The Dunfords deducted $44,862 for 2005 and $48,703 for 2006 for: car and truck expenses, repairs and maintenance, depreciation, insurance, tax and license, and utilities. With the exception of a relatively small amount of depreciation for unspecified assets, all of these deductions appear related to the Dunfords' vehicles, and each of these deductions (including depreciation) is disallowed for at least one of three reasons: (a) The Dunfords used the motor home as a residence during 2005 and 2006, so that section 280A disallows the deductions. (b) The Dunfords have already claimed and been allowed deductions for their business use of their motor home and other vehicles based on a mileage rate, so that deductions for actual costs would be duplicative. And (c) the Dunfords have failed to adequately substantiate their entitlement to many of their vehicle-related deductions.

**[\*16]**                    a.        <u>Section 280A</u>

Section 280A(a) states the following general rule:  "[N]o deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  The Dunfords' motor home was both a "dwelling unit" and a "residence" for 2005 and 2006.  <u>See</u> <u>infra</u> part II.B.2.b.  Unless one of two relevant exceptions is applicable--i.e., section 280A(b) for nonbusiness deductions or section 280A(c)(1) for the home office exception--no deductions are allowed "with respect to the use" of their motor home.  Sec. 280A(a).

i.        <u>Nonbusiness deductions</u>

Deductions that are "allowable to the taxpayer[s] without regard to * * * [their] connection with his trade or business" are not subject to the limitations in section 280A.  Sec. 280A(b).  As we discuss below in part II.B.2.b., the Dunfords' interest expenses are allowable to them without regard to the connection with their trade or business.  Assuming the interest expenses are deductions "with respect to the use" of their motor home, they fit within the exception in section 280A(b), and are still deductible.  However, the non-interest expenses in dispute do not fit within this exception.

**[*17]**                    ii.    Home office exception

The Dunfords' other motor home related deductions are claimed pursuant to sections 162 and 167, and their deductibility depends on their connection to Exam Group activities. The so-called "home office" exception in section 280A(c)(1) allows a deduction "to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis" (emphasis added) for business purposes. The Dunfords did not prove that there was an identifiable portion of their motor home that was used exclusively for business purposes. The area they seemed to put forward as the home office was the countertop that Mr. Dunford used as a desk; but (1) they did not make any showing of the percentage of the vehicle that constituted this area (it would be a very small percentage), and (2) it is implausible to suggest that, in the cramped quarters of a motor home, an unclosed area like the countertop would somehow be exclusively reserved to business activity. Accordingly, all deductions (other than deductions for interest expenses) the Dunfords claimed "with respect to the use of" their motor home are disallowed under section 280A(a).

                    b.    Double deductions

A taxpayer may deduct vehicle expenses on the basis of actual cost (e.g., depreciation, maintenance and repairs, tires, gasoline, oil, insurance, and other

[*18] fees) <u>or</u> by using the standard mileage rate,[8] but <u>not both</u>. <u>Nash v. Commissioner</u>, 60 T.C. 503, 520 (1973); 26 C.F.R. sec. 1.274-5(j)(2), Income Tax Regs. The IRS agrees that the Dunfords may deduct travel expenses of $11,917 for 2005 and $19,199 for 2006. These travel expenses correspond to amounts listed on the itemized business expense reports that the Dunfords submitted to XVD for reimbursement. Included on the XVD expense reports were expenses calculated using mileage rates for the Dunfords' business use of their motor home and personal vehicles, which correspond to the mileage documented in their activity logs. Since these mileage-based deductions have already been allowed, the Dunfords are not entitled to additional deductions for the actual cost of their vehicle expenses.

### c. Substantiation

Even if the Dunfords could deduct vehicle expenses based on actual costs, they failed to substantiate those costs. Deductions related to the Dunfords' vehicles (apart from mortgage interest discussed below) are subject to strict substantiation under section 274(d). <u>See</u> sec. 280F(d)(4).

---

[8]The standard mileage rate for January 1 to August 31, 2005, was 40.5 cents, and from September 1 to December 31, 2005, it was 48.5 cents. Rev. Proc. 2004-64, 2004-2 C.B. 898, as modified by Announcement 2005-71, 2005-41 2005-2 C.B. 714. The standard mileage rate for 2006 was 44.5 cents. Rev. Proc. 2005-78, 2005-2 C.B. 1177.

**[*19]**                           i.       Vehicle expenses and repairs and maintenance

The Dunfords claimed deductions for car and truck expenses of $9,613 for 2005 and $3,605 for 2006 and repairs and maintenance expenses of $5,803 for 2005 and $2,354 for 2006.  These deductions were for expenditures related to at least three vehicles:  the Dunfords' motor home, their Ford Explorer, and their Saturn SC2.  With regard to deductions for their motor home, we do not reach the question of whether they are adequately substantiated because even if they were, they are still disallowed under section 280A, discussed above.  Section 280A does not apply to the other two vehicles, so we address substantiation for them.

The Dunfords provided receipts substantiating that they did incur many of the vehicle, repair, and maintenance expenses reported on their return; however, the Dunfords failed to adequately substantiate their business use of the Ford Explorer and the Saturn SC2.  On their return the Dunfords reported 100% business use for both the Ford and Saturn.  At trial Mr. Dunford testified that it was actually more like 80%, but neither his testimony nor his reconstructed logs reliably show the nature or quantum of the use of these vehicles.  On the contrary,

[*20] any business use of the Ford or Saturn seems unlikely for much of 2006 since Mr. Dunford rented a car every day from July 1 to November 30, 2006.[9]

The Dunfords have failed to meet requirements under section 274(d) to substantiate their entitlement to deductions for their business use of the Ford Explorer and the Saturn SC2. Accordingly, we will sustain the IRS's determinations with regard to all the vehicle expenses and repairs and maintenance deductions.

## ii. Depreciation

The Dunfords claimed depreciation deductions totaling $24,698 for 2005 and $34,999 for 2006. For depreciation deductions, the Dunfords must establish each property's depreciable basis by showing the cost of the property, its useful life or recovery period, and the previously allowable depreciation. See, e.g., Cluck v. Commissioner, 105 T.C. 324, 337 (1995). This requirement is in addition to the heightened substantiation required by section 274(d) for proving the business use of certain assets.

The Dunfords claimed depreciation deductions for their motor home, two vehicles, and other unspecified assets. Apart from the original cost of their motor

---

[9]The Dunfords have claimed a deduction for the associated rental car expenses, and the IRS does not dispute their entitlement to that deduction.

**[*21]** home, the Dunfords have failed to provide any evidence to substantiate their depreciation deductions or the calculations they made to determine those deductions. For this reason, in addition to the others discussed above, we sustain the IRS's determination with regard to depreciation.

### iii. Tax and licenses, insurance, and utilities

The Dunfords deducted insurance expenses of $3,284 for 2005 and $3,449 for 2006; tax and license expenses of $194 for 2005 and $364 for 2006; and utility expenses of $1,270 for 2005 and $3,932 for 2006. Because the Dunfords provided neither proof of payment nor detailed explanations regarding these expenses--which we can only assume are related to the Dunfords' motor home and other automobiles--we sustain the IRS's determination and hold that the Dunfords are not entitled to any deductions for these expenses claimed on their 2005 and 2006 tax returns.

### 2. Interest on motor home loan

The Dunfords originally deducted their interest expenses of $14,985 for 2005 and $14,565 for 2006 as business interest expenses on Schedules C, and the Commissioner contends that they have not satisfied the strict substantiation requirements in section 274(d) for those expenses. The Dunfords now argue, however, that these interest expenses are alternatively deductible as mortgage

[*22] interest pursuant to section 163(h)(3), which does not depend on substantiation of their use of the motor home in a trade or business. We will address this alternative argument.[10]

The interest that the Dunfords deducted for 2005 and 2006 was paid on a loan that they used to buy their motor home. Section 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." While section 163(h) limits this general rule by disallowing any deductions for "personal interest", section 163(h)(3) excludes from the definition of non-deductible personal interest (and therefore allows a deduction for) interest paid on "acquisition indebtedness" incurred to acquire a "qualified residence". It is this provision that the Dunfords invoke.

### a. Acquisition indebtedness

Acquisition indebtedness is defined as any indebtedness that is "incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer" and "is secured by such residence". Sec. 163(h)(3)(B). The Dunfords have established that they incurred their indebtedness in order to acquire their

_____

[10]The Commissioner does not contend that the Dunfords exceeded the $1 million limit on acquisition indebtedness, see sec. 163(h)(3)(B)(ii), and nothing in the record suggests that they did. We therefore do not address that issue.

[*23] motor home and that the loan was secured by their motor home.

Accordingly, the Dunfords have satisfied the "acquisition indebtedness"

requirement.

### b.  Qualified residence

The next question is whether the Dunfords' motor home was a "qualified

residence", and we conclude it was.  A "qualified residence" includes the principal

residence of the taxpayer (which would be the Dunfords' home in Quincy, Illinois)

and "1 other residence of the taxpayer which is selected by the taxpayer for

purposes of * * * [section 163(h)] for the taxable year and which is used by the

taxpayer as a residence (within the meaning of section 280A(d)(1))".

Sec. 163(h)(4)(A)(i).

Section 280A(d)(1) provides:  "[A] taxpayer uses a dwelling unit during the

taxable year as a residence if he uses such unit (or portion thereof) for personal

purposes for a number of days which exceeds the greater of--(A) 14 days, or

(B) 10% of the number of days during such year for which such unit is rented at a

fair rental."  The Dunfords did not rent their motor home to others but did live in

their motor home for more than 14 days in each of the years in issue.  Their motor

home is therefore used as a "residence" for purposes of section 163(h).  See

sec. 280A(d)(1), (f)(1)(A) (including "mobile home" in the definition of "dwelling

[*24] unit"); see also Haberkorn v. Commissioner, 75 T.C. 259, 260 (1980)

(holding that a motor home is subject to section 280A).

Section 163(h)(4)(A)(i)(II) also requires that a qualified residence be

"selected by the taxpayer for purposes of * * * [section 163(h)]". The Dunfords

did not "select" the motor home as their second residence on their returns; but the

statute does not require "select[ion]" on the return. Temporary regulations permit

a taxpayer to "elect" a second residence, see sec. 1.163-10T(p)(3)(iv), Temporary

Income Tax Regs., 52 Fed. Reg. 48410 (Dec. 22, 1987); but there is no provision

in the Code or the regulations that fixes the time or the manner by which a

taxpayer makes the selection. Making that selection in litigation is acceptable.

See Lawler v. Commissioner, T.C. Memo. 1995-26. We conclude that the

Dunfords are entitled to deduct as "qualified residence interest" their motor home

loan interest payments.

C.    Meals and travel

A taxpayer may deduct "traveling expenses * * * while away from home in

the pursuit of a trade or business",[11] sec. 162(a)(2); but section 274(d) subjects

---

[11]The Commissioner's principal contention as to travel expenses is that the Dunfords have not substantiated them, beyond what the Commissioner has conceded. In response to a question raised by the Court, the Commissioner contended after trial that, for tax purposes, the Dunfords had no "home" in 2005

(continued...)

[*25] expenses for meals and travel to the heightened substantiation standards discussed above. The Dunfords deducted $13,464 for travel and $2,205 for meal expenses on their 2005 return. On their 2006 return, the Dunfords deducted $25,689 for travel and $5,527 for meal expenses. There can be no denying that the Dunfords traveled for their business; and the IRS did not deny it, allowing the deductions in large part: $11,971 for travel and $156 for meals for 2005, and $19,199 for travel and $2,461 for meals for 2006. The amounts allowed largely correspond to the expenses that the Dunfords' clients reimbursed. The Dunfords have receipts showing greater expenditures incurred while they were away from Quincy, but their failure to credibly distinguish between their personal expenses and their actual business expenses makes us unable to find any additional business-related travel expense. The Dunfords in their post-trial briefs have not

-------

[11](...continued)
and 2006 (other than the motor home, from which they were not "away" while traveling), so that "Petitioners are not entitled to deduct expenses arising from their travels in tax years 2005 and 2006 in amounts greater than already allowed by respondent." (Emphasis added.) Logically, the Commissioner should "allow" zero away-from-home travel expense amounts if petitioners had no "tax home"; but he does not retract his prior concession. Since we uphold the Commissioner's primary contention (lack of substantiation), and since the Commissioner continues to concede the deductibility of the amounts that were substantiated, none of the amounts in dispute turn on the "tax home" issue, so we do not address it.

**[*26]** addressed their entitlement to the remaining amounts they claimed on their returns. We therefore sustain the IRS's determinations for travel and meals expenses.

### D.    Office and supplies expenses

The Dunfords claimed combined office and supplies expense deductions of $10,396 on their 2005 return and $12,796 on their 2006 return. Evidently conceding the bulk of those amounts, the Dunfords' post-trial briefs point to several receipts to substantiate their entitlement to deductions of $2,666.82 for 2005 and $194.19 for 2006. The Dunfords have provided little explanation of the expenses apart from the receipts. Most of them, standing alone, are inadequate to substantiate a business expenditure; and some receipts reflect expenses that the Commissioner had already stipulated as deductible. But a few of the remaining receipts do provide enough information to support a reasonable inference of a business purpose (e.g., printing costs, binders for presentations, and office rental). On the record before us, we conclude the Dunfords are entitled to the following additional deductions:

[*27]                         Office expenses

| Year | Amount | Purchase | Merchant |
|------|--------|----------|----------|
| 2005 | $600.00 | Office rental | Quincy office rental |
| 2005 | 75.41 | Computer software | Staples |
| 2005 | 107.74 | Digital voice recorder | Radio Shack |
| Total | 783.15 | | |

                          Supplies expenses

| Year | Amount | Purchase | Merchant |
|------|--------|----------|----------|
| 2005 | $123.54 | Printer ink | Staples |
| 2005 | 51.75 | Printer ink | Staples |
| Total | 175.29 | | |
| 2006 | 26.58 | Binders for XVD | Rite-Aid |

For the remaining office and supplies expense deductions in dispute, we sustain the IRS's determinations because either the Dunfords failed to show that they incurred the expense, or they failed to show that the expense had a business purpose, or both.

E.    Legal and professional services

On their 2006 return the Dunfords deducted $1,455 for legal and professional services; the IRS allowed $385 of that amount. Neither the Dunfords' trial testimony nor their post-trial briefs addressed their entitlement to

**[*28]** the remaining $1,070, and we find no documentary evidence that relates to this deduction.  Accordingly, we sustain the IRS's determination on this point.

F.    2006[12] "Other expenses"

In addition to $277 for postage and printing that the Commissioner has stipulated, the Dunfords contend that they should be allowed to deduct $3,456[13] for communication expenses, which they deducted as "Other expenses" on the Schedule C attached to their 2006 return.  Section 262(a) generally disallows deductions for personal expenses, and section 262(b) provides that the cost of the first telephone line of a taxpayer's residence will be treated as a personal expense.  While the Dunfords have not deducted any telephone expenses for their home in Quincy, they have incurred expenses for:  three mobile phones (apparently Mr. Dunford's personal phone, Mrs. Dunford's personal phone, and a business phone), Internet service, a separate motor home telephone line for part of the year,

---

[12]On their 2005 return the Dunfords claimed a deduction of $4,390 for various "Other expenses".  The parties have stipulated that the Dunfords are entitled to $459 of those deductions.  The Dunfords have not indicated that they should be entitled to more than that amount, so we infer that there is no remaining dispute as to 2005 "Other expenses".

[13]On their 2006 return, the Dunfords deducted $7,477 in "Other expenses".  In their post-trial briefs they have not addressed the remaining $3,744 that they claimed on their 2006 return (i.e., beyond the Commissioner's stipulation and their continuing claim for $3,456), so we find that the Dunfords concede that this remaining amount is nondeductible.

**[\*29]** and a laptop computer. The Dunfords used these services while they lived in the motor home and contend they are entitled to deduct $3,456 for the associated costs.

### 1. Phones and Internet

We find that the Dunfords used two of the three mobile phones for personal purposes, and deductions for those two phones are therefore not allowed. As for the part-year separate motor home line, the third mobile phone, and Internet service, we find that Mr. Dunford used those services for business purposes.

For the years in issue, mobile phones are subject to the strict substantiation standards of section 274(d); Internet and land-line telephone service are not. See Noz v. Commissioner, T.C. Memo. 2012-272. The Dunfords adequately substantiated both the amounts of the expenses for these specific business-related services with their monthly service bills ($625 for the business mobile phone and Internet service, and $209 for their motor home phone and Internet service) and the business purpose of the expenses. Accordingly, for 2006 the Dunfords are entitled to deductions of $625 for mobile phone and Internet service and $209 for their motor home phone and Internet service.

**[*30]**      2.     <u>Computer</u>

Included in their claim for "communication expenses" is $1,014.70 for a laptop computer that the Dunfords bought in November 2006. This deduction must be disallowed for multiple reasons:

(1) A computer is a capital item, not an ordinary and necessary expense. Sec. 168(e)(3)(B)(iv), (i)(2)(B). A capital item can be deducted as a current expense only if the taxpayer makes the election required by section 179(c), but the Dunfords made no showing that they made such an election.

(2) Computers are also subject to the heightened substantiation requirements of section 274(d), unless they are used exclusively at a regular business establishment and are owned or leased by the person operating such establishment. Sec. 280F(d)(4)(B). Since the Dunfords lived and worked out of their motor home throughout 2006, we assume that the laptop was used primarily in the Dunfords' motor home. Given the predominantly personal nature of their motor home, we conclude that the laptop was not used exclusively at a regular business establishment. The Dunfords have not provided a log or other evidence indicating the percentage of their laptop use that was for business purposes needed to satisfy the requirements of section 274(d).

[*31] (3)    It appears that the IRS allowed this expense (presumably inadvertently) as one of the travel expenses it conceded.  We will not overrule the IRS's concession, but we clearly should not allow a double deduction for this item.  Accordingly, we will sustain the IRS's determination regarding the $1,014.70 laptop expense.

III.    NOL deductions

The Dunfords assert that they are entitled to NOL carryover deductions of $46,743 for 2005 and $21,633 for 2006.  In general, a taxpayer is entitled to deduct as an NOL for a taxable year an amount equal to the sum of the NOL carryovers and NOL carrybacks to that year.  Sec. 172(a).  A taxpayer claiming an NOL deduction must file with his return "a concise statement setting forth the amount of the * * * [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the * * * [NOL] deduction."  Sec. 1.172-1(c), Income Tax Regs.  The Dunfords bear the burden of establishing both the existence of NOLs in prior years and the amounts that may be carried forward to the years in issue.  See Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000).

The Dunfords offered no evidence to substantiate their alleged losses in prior years giving rise to the NOL carryover deductions they now claim.  Rather,

**[*32]** they assert that the prior-years' losses arise from Schedule C expenses like those they incurred in the years in issue, and they argue that if they prevail as to those expenses for the years in issue, then for the same reasons they should prevail as to the NOL carryovers. Their contention fails, because even if they had largely shown their entitlement to Schedule C expenses for 2005 and 2006 (and they did not), this would not have carried their burden to prove the equivalent expenses in the loss-generating years. Accordingly, they have failed to substantiate their respective NOL carryovers and are not entitled to claim any NOL deductions for the years in issue.

IV.   Penalties

Section 6662(a) and (b)(1) and (2) imposes an "accuracy-related penalty" of 20% of the portion of the underpayment of tax that is attributable to the taxpayer's negligence or disregard of rules or regulations or that is attributable to any substantial understatement of income tax. The IRS asserts that the Dunfords' understatements were substantial. Under section 7491(c), the Commissioner bears the burden of production and must produce sufficient evidence that the imposition of the penalty is appropriate in a given case. Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the

**[*33]** Commissioner's determination is incorrect.  Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).

A.    <u>"Substantial understatement"</u>

An understatement of income tax for an individual is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1).  Even though we have allowed additional deductions not allowed in the notice of deficiency, the Dunfords' understatements of income tax (which will be recomputed pursuant to Rule 155) will evidently exceed the greater of 10% of the tax required to be shown on the return or $5,000 for both 2005 and 2006.  Accordingly, the Commissioner has met his burden that to produce evidence that  Dunfords' returns reflected "substantial understatement[s]".  The Dunfords will therefore owe the accuracy-related penalty on the entire amount of the underpayment for each year unless they can successfully invoke a defense to the penalty.

B.    <u>"Reasonable cause" and "good faith"</u>

The Dunfords contend that no penalty should be imposed against them, because "reasonable cause" and "good faith" warranted their tax reporting.[14]

---

[14]The Dunfords do not contend that they had "substantial authority" for their position or that they disclosed on their return the issues resolved against them, sec.

(continued...)

[*34] Section 6664(c)(1) provides that if taxpayers show, first, that there was reasonable cause for a portion of an underpayment and, second, that they acted in good faith with respect to such portion, then no accuracy-related penalty shall be imposed with respect to that portion. Whether taxpayers acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including their efforts to assess their proper tax liability, their knowledge and experience, and the extent to which they relied on the advice of a tax professional. Sec. 1.6664-4(b)(1), Income Tax Regs.

The Dunfords argue that they had reasonable cause and acted in good faith in relying on the advice of their longstanding accountant (i.e., not a certified public accountant but a return preparer). The Dunfords contend that because they "lack taxation training and expertise, [they] cannot be expected, on their own, to calculate properly and, for that matter, understand the proper tax treatment of the business deductions taken by them."

While it is true that the Dunfords may not have had any specific training in tax or accounting, we find that the Dunfords were reasonably sophisticated business people. They were certainly able to tell the difference between a personal

_____

[14](...continued)
6662(d)(2)(B), and the record shows no basis for such contentions. We therefore do not address these other potential defenses.

[*35] expense and a business expense--but the receipts in evidence (which they used to substantiate their deductions) show that they failed to take care to make this distinction. In addition, the Dunfords should have been able to determine that they were claiming multiple deductions for the same expenses. Nothing in the record indicates that these errors were the result of tax advice. To the contrary, the record indicates that their return preparer completed their return using the summaries of expenses and business use percentages that Mr. Dunford provided him. When their deductions were challenged, they produced no substantiation for significant portions of them.

We find that the Dunfords had neither reasonable cause nor good faith with regard to the positions they maintained on their returns. Accordingly, to the extent we sustain the IRS's determinations, we also sustain the corresponding accuracy-related penalties.

V.    Conclusion

The determinations in the IRS's notice of deficiency are sustained in part, as is explained above. So that the liabilities for the years in issue can be computed,

Decision will be entered under

Rule 155.

[*36]                                    APPENDIX A

The following table displays (i) the amounts the Dunfords deducted on their

2005 return for various items, (ii) the amounts that the IRS allowed in the notice of

deficiency, (iii) amounts that the parties have stipulated the Dunfords are entitled

to, and (iv) additional amounts that we find the Dunfords incurred and for which

they adequately substantiated the requisite business purpose or use:

| Expense | Return | Notice | Stipulated | Additional amounts |
|---|---|---|---|---|
| Car and truck | $9,613 | -0- | -0- | -0- |
| Depreciation | 24,698 | -0- | -0- | -0- |
| Insurance | 3,284 | -0- | -0- | -0- |
| Interest | 14,985 | -0- | -0- | $14,985 |
| Legal and professional service | 305 | $305 | -0- | -0- |
| Office | 5,923 | -0- | -0- | 783 |
| Repairs and maintenance | 5,803 | -0- | -0- | -0- |
| Supplies | 4,473 | -0- | $192 | 175 |
| Taxes and licenses | 194 | -0- | -0- | -0- |
| Travel | 13,464 | 11,971 | -0- | -0- |
| Deductible meals | 2,205 | 156 | -0- | -0- |
| Utilities | 1,270 | -0- | -0- | -0- |
| Other | 4,390 | -0- | 459 | -0- |

**[*37]**                    APPENDIX B

The following table displays similar amounts for the Dunfords' 2006 taxable year:

| Expense | Return | Notice | Stipulated | Additional amounts |
|---|---|---|---|---|
| Car and truck | $3,605 | -0- | -0- | -0- |
| Depreciation | 34,999 | -0- | -0- | -0- |
| Insurance | 3,449 | -0- | -0- | -0- |
| Interest | 14,565 | -0- | -0- | $14,565 |
| Legal and professional service | 1,455 | $385 | -0- | -0- |
| Office | 9,177 | -0- | -0- | -0- |
| Repairs and maintenance | 2,354 | -0- | -0- | -0- |
| Supplies | 3,619 | -0- | $70 | 27 |
| Taxes and licenses | 364 | -0- | -0- | -0- |
| Travel | 25,689 | 19,199 | -0- | -0- |
| Deductible meals | 5,527 | 2,461 | -0- | -0- |
| Utilities | 3,932 | -0- | -0- | -0- |
| Other[1] | 7,477 | -0- | 277 | 834 |

[1]The other expenses included:  subscriptions, postage, computer software, printing and copies, telephone services, mobile phones, Internet and Web services, communication equipment, promotional/gifts, express mail, clothes, and bank charges.